RECEIVED

AUG 2 3 2016

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| MELANIE TAYLOR | CIVIL ACTION NO. 6:15-598 |
| VERSUS | JUDGE DOHERTY |
| ROBERT A. MCDONALD | MAGISTRATE JUDGE HANNA |

**MEMORANDUM RULING**

Currently pending before the Court is a motion for summary judgment [Doc. 32], filed by defendant Robert A. McDonald, Secretary of the United States Department of Veterans Affairs, whereby defendant seeks dismissal with prejudice of all claims brought by plaintiff. For the following reasons, the motion is DENIED IN PART and GRANTED IN PART.

I.  **Factual and Procedural Background**

This matter involves claims brought under Title VII for unlawful discrimination on the basis of sex. More specifically, plaintiff Melanie Taylor asserts she was subjected to a hostile work environment based upon sex, and retaliation for her engagement in protected activity in the form of a poor rating on her annual performance review.[1]

Plaintiff began working as a Licensed Practical Nurse ("LPN") with the United States Department of Veterans Affairs ("VA") in 1997. In June 2005, plaintiff accepted a position at the

---

[1] To the extent plaintiff asserts a claim for violations of the "Rehabilitation Act" in her complaint, 29 U.S.C. § 701 et seq., that claim has been voluntarily dismissed. [Doc. 32-2, pp. 5-6; Doc. 32-3, pp. 38-39]

Lafayette Community Based Outreach Clinic ("LCBOC"), a subsidiary of the VA Medical Center in Alexandria, Louisiana. Mary Andrus is a coworker and fellow LPN of Taylor's who began working at the LCBOC in 2011. Plaintiff alleges "[b]etween June 2011 and May 2012, Andrus engaged in a pattern and practice of making hostile, threatening and offensive comments about Taylor, and other coworkers, at the LCBOC." [Doc. 1, p. 2]

More specifically, plaintiff alleges Andrus told their colleagues Andrus "was going to tie Taylor up, put her in the trunk, and throw her in the bayou." [Id. at 3] Plaintiff alleges Andrus told colleagues Taylor was a "junkie," Andrus told colleagues Taylor was dating another female coworker and they were "gay," and that Taylor was "sleeping with patients for money." [Id.] Andrus did not make the offensive comments when Taylor was present, but Taylor was informed of the comments by her coworkers. [Id. at 2-3]

In May of 2012, plaintiff advised her supervisor Geralyn Shelvin of the comments and requested a meeting to address the matter. [Id. at 3] On May 15, 2012, plaintiff's supervisor met with plaintiff, Andrus, and two other employees. According to plaintiff, after discussing the comments made by Andrus and how she was disturbed by them, Andrus responded "by crying throughout the meeting, and at one point stating she was sorry if she hurt anybody." [Id. at 3] At the conclusion of the meeting, plaintiff and Andrus agreed "to start a clean slate." [Doc. 32-3, p. 32] Plaintiff's supervisor did not take any further action in response to the information discussed at the meeting. [Id. at 3-4]

However, after the meeting Andrus contacted VA supervisory staff and claimed that plaintiff was bullying Andrus and creating a hostile work environment towards Andrus. [Doc. 1, p. 4] Specifically, Andrus claimed plaintiff had called a meeting and made false allegations toward

plaintiff. In response to Andrus' claims, the supervisor instructed the Associate Chief of Nursing to conduct a fact-finding investigation regarding a possible hostile work environment created by plaintiff. [Id.] After scheduling fact-finding interviews, the investigator was contacted by a union representative who advised it was plaintiff who was being harassed, and not Andrus. [Id.] At that point, the investigation was cancelled, and Andrus' claim was never investigated by the VA. [Id.; see also Doc. 32-4, p. 20; doc. 32-1, p. 2]

On July 11, 2012, plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint alleging, as relevant here, hostile work environment on the basis of sex, the failure of management to take appropriate action upon becoming aware of the harassment, and retaliation for prior protected EEO activity. [Doc. 1, p. 4] On September 26, 2012, the LCBOC Director temporarily reassigned Andrus to the Jennings, Louisiana facility and ordered an Administrative Investigative Board to investigate the hostile work environment claims made by plaintiff. [Id.] On November 5, 2012, the AIB found Andrus had made the alleged inappropriate comments about plaintiff. As a result, Andrus was permanently reassigned to the Jennings facility. [Id. at 5; Doc. 32-1, p. 3] On August 21, 2013, the VA Office of Employment Discrimination issued a Final Agency Decision, finding plaintiff "proved that she was subjected to a hostile work environment based on her sex for which the Agency is liable." [Doc. 1, p. 5 (quoting Doc. 32-4, p. 33)]

With regard to her claim of retaliation, plaintiff asserts on April 25, 2013, she filed a complaint against second-level supervisor Barbara Nugent for harassment, because "Nugent wrote [plaintiff] up for taking pre-approved disability leave." [Doc. 34-12, p. 2] On October 25, 2013, plaintiff received a performance evaluation of "Excellent" from her immediate supervisor. On November 1, 2013, plaintiff was informed by her supervisor that Nugent "had unilaterally–and

without justification–lowered Taylor's performance evaluation from 'Excellent' to 'Fully Successful.'" [Id. at 2, 5] According to plaintiff, a rating of "exceptional" entitled her to a bonus, whereas a rating of "fully successful" did not. [Doc. 34, p. 20] In January 2014, the VA issued a Final Agency Decision concluding that plaintiff failed to prove Nugent had a retaliatory motive in connection with plaintiff's "Fully Successful" performance rating. [Doc. 32-4, p. 56]

## II.   Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought." Fed.R.Civ.P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* at § (c)(1).

As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994)(internal citations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001).

### III. Applicable Law

#### A. Hostile Work Environment

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has found same-sex harassment claims are actionable under Title VII. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998). In analyzing same-sex hostile work environment claims, the first inquiry is whether the alleged harasser's conduct constitutes discrimination on the basis of sex; only if the answer is yes, does one move to the second inquiry of whether the conduct meets the standard for a hostile work environment claim. *La Day v. Catalyst Tech, Inc.*, 302 F.3d 474, 478 (5th Cir. 2002).

In a same-sex harassment case, discrimination on the basis of sex can be established by showing: (1) the alleged harasser made explicit or implicit proposals of sexual activity, coupled with

credible evidence that the harasser was homosexual; (2) the harasser was motivated by general hostility to the presence of members of the same sex in the workplace; or (3) "direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."[2] *La Day v. Catalyst Tech, Inc.*, 302 F.3d 474, 478 (5th Cir. 2002)(quoting *Oncale* at 80). These three approaches are illustrative, not exhaustive. *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 445-56 (5th Cir. 2013).

Defendant contends plaintiff cannot show any discrimination against her was based on sex. However, defendant devotes its entire argument to only the first illustrative scenario - i.e., that plaintiff cannot show Andrus made explicit or implicit proposals of sexual activity, nor can she provide credible evidence that Andrus was homosexual. [Doc. 32-2, pp. 10-11] With regard to the latter two illustrative scenarios, defendant merely summarily states, "Likewise, record [sic] is void of any proof that would establish the other two prongs of the same-sex discrimination/harassment analysis." [Id.]

Plaintiff contends she has presented evidence to establish the second scenario - i.e., that Andrus was motivated by general hostility to the presence of members of the same sex in the workplace. In support, plaintiff relies upon the finding of the VA in its Final Agency Decision that plaintiff alleges establishes she was subjected to unlawful discrimination on the basis of her sex. [Doc. 34, pp. 12-13] Specifically, the VA found: "it was [Andrus'] intention to degrade Complainant as a female by stating that Complainant was gay and was involved in a sexual relationship with

---

[2]As explained by the Supreme Court, "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale*, 523 U.S. at 80. Rather, it is sufficient to show discrimination against a member of a protected class; any conclusive presumption "that human beings of one definable group will not discriminate against other members of their group" must be rejected. *Id.* at 78, 80.

another female rather than with a male," and that plaintiff was additionally subjected to Andrus' "comments to other LPNs that Complainant has sex with patients of the [VA] for money." [Doc. 32-4, p. 31]

Plaintiff has presented some evidence to support this prong - albeit, primarily by referencing the agency's conclusions and not the underlying facts. The conclusions are not determinative, however, the underlying facts supporting that conclusion can be seen as evidence.[3] Thus, plaintiff has obliquely presented evidence to support the second illustrative scenario. However, defendant has made no attempt to address this evidence or prong, nor has it shown "the materials cited [by plaintiff] do not establish the . . . presence of a genuine dispute" with regard to whether Andrus' conduct constitutes discrimination on the basis of sex. Fed. R. Civ. P. 56(c)(1)(B). Consequently, defendant has failed to carry its burden as to this aspect and to meet plaintiff's argued evidence. Thus, the Court turns to the second phase of the inquiry - whether the alleged conduct meets the standard for a hostile work environment claim. *La Day* at 478.

The creation of a hostile work environment through harassment is a form of prohibited discrimination under Title VII. *Boh Bros. Const.* at 452. "'When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.'" *Oncale* at 78 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). To succeed on a claim of hostile work environment where the alleged harasser is a co-employee, a

---

[3]While judicial review of a federal employee's discrimination claim is de novo, "[p]rior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial de novo." *Chandler v. Roudebush*, 425 U.S. 840, 862, 863, n. 39 (1976).

plaintiff must show: (1) she belongs to a protected class, (2) she was subject to unwelcome harassment, (3) the harassment was based on sex, (4) the harassment affected a term, condition, or privilege of employment, and (5) her employer knew or should have known of the harassment and failed to take proper remedial action. *Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 873 (5th Cir. 1999). In this matter, again, defendant limits its argument, contending only that plaintiff cannot satisfy her prima facie burden with regard to elements two, three and four. Element one is not in dispute; defendant ignores element five.

### 1. Unwelcome Sexual Harassment & Harassment Based On Sex

Defendant jointly addresses the second and third elements of plaintiff's prima facie claim as follows:

> Plaintiff cannot show that she was the victim of unwelcome sexual harassment based on sex. Plaintiff testified that she perceived Andrus had romantic inclinations toward her because Andrus asked Plaintiff to have dinner, go the [sic] movies, and to work out together. According to Plaintiff, Andrus "pursued her like a man." Yet, Plaintiff conceded that her platonic female friends have also invited to dinner [sic], as well to movies and the gym.

[Doc. 32-2, p. 12] No further argument is made regarding these two elements.

With regard to the second element (unwelcome sexual harassment), plaintiff responds by, again, merely citing to the VA's conclusion that plaintiff "was subjected to unwelcome verbal conduct of a sexual nature when Ms. [Andrus] made comments about Complainant's sexual orientation and an alleged homosexual relationship with a female coworker."[4] [Doc. 34, p. 14; Doc. 32-4, p. 31] With regard to the third element (harassment based on sex), plaintiff contends the "record is replete with evidence that Andrus's harassment was based on Taylor's sex." [Doc. 34, p.

---

[4]The VA based this finding upon witness testimony and the AIB report. [Doc. 32-4, p. 31]

14] In support of this rather broad conclusory statement, plaintiff again relies only upon the VA's Final Agency Decision. Specifically, plaintiff cites to that portion of the decision which concluded, "the evidence establishes that it was Ms. [Andrus'] intention to degrade Complainant as a female by stating that Complainant was gay and was involved in a sexual relationship with another female rather than with a male." [Doc. 32-4, p. 31] Again, the Court reminds plaintiff review of this matter is de novo.

It is not lost on this Court that prior administrative findings are not determinative, as this Court's review is de novo. Neither is it lost on this Court that administrative findings are based on facts reflecting conduct, and may be admitted as evidence at the "federal-sector trial de novo." *Chandler* at n. 39. Thus, for purposes of this motion this Court must find plaintiff has put forth evidence, and yet, defendant has chosen not to address that evidence or plaintiff's argument, other than to dismiss same in an unsupported conclusory fashion. As defendant has made no attempt to show "that the materials cited do not establish the . . . presence of a genuine dispute," Fed. R. Civ. P. 56 (c)(1), again, movant has failed to carry its burden, and the analysis must proceed.

### 2.     Harassment Affected a Term, Condition or Privilege of Employment

"To affect a term, condition, or privilege of employment, the harassment 'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir.2008) (alteration in original) (quoting *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir.2007)). "The environment must be deemed 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)).

"Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Septimus v. Univ. of Hous.*, 399 F.3d 601, 611 (5th Cir.2005).

Defendant contends plaintiff cannot satisfy this element of her claim, arguing:

> Plaintiff admits that the denigrating comments allegedly made by Andrus regarding Plaintiff were communicated to her on one occasion by co-workers, and that she was unaware of how often Andrus made the alleged remarks. Perhaps the most important factor to consider in this analysis is that Mary Andrus was Plaintiff's co-worker and did not supervise Plaintiff in any capacity. Therefore, although the alleged comments at issue – that Andrus was going to tie Plaintiff up and throw her in the bayou, that Plaintiff slept with patients for money, that Plaintiff was a "junkie," "union bully," etc. – may have been inappropriate and offensive, they were allegedly made by a colleague who had no authority to take any tangible employment action against Plaintiff. Moreover, Plaintiff admits that no tangible element of her job changed during the time she and Mary Andrus worked at the Lafayette CBOC.

[Doc. 32-2, p. 12 (citations omitted)] This constitutes the entirety of defendant's argument on this element of the hostile work environment claim.

Plaintiff, again, responds by relying upon the VA's findings:

> [W]e find that Ms. [Andrus's] pattern of comments regarding Complainant's sexuality constitute harassment sufficiently severe and pervasive to create a hostile work environment. . . . In this case, Complainant was not only subjected to Ms. [Andrus'] comments regarding her sexuality and alleged involvement in a homosexual relationship but also to Ms. [Andrus'] comments to other LPNs that Complainant has sex with patients of the LCBOC for money.

[Doc. 32-4, p. 31] However plaintiff, additionally, notes the jurisprudential concept of "tangible employment action," suggested by movant's argument, is only relevant where the harasser is a supervisor.

The Court agrees; it is irrelevant to the legal analysis now before the Court that no tangible employment action was taken against plaintiff, as such a concept comes into play only where the alleged harasser is the complainant's supervisor. *Boh Bros. Const.*, 731 F.3d at 452; *Jones v. Flagship Intern.*, 793 F.2d 714, 720 (5th Cir. 1986). Further, as defendant, again, has made no attempt by way of meaningful argument or evidence cited, to show "the materials cited do not establish the . . . presence of a genuine dispute," Fed. R. Civ. P. 56 (c)(1), the movant, again, has failed to carry its burden with regard to this element as well. As defendant has failed to carry its burden and show it is entitled to summary dismissal of plaintiff's claim as to any prong or element for hostile work environment, its motion must be DENIED with regard to this claim.

In conclusion, it should be noted this Court could make no determination *on the merits* of plaintiff's claim of hostile work environment *due to movant's failure to carry its burden*, and *not necessarily due to the strength of plaintiff's claim on the merits*. **This Court can make no determination on the merits**, as movant did not carry its burden as to any element as to plaintiff's claim for hostile work environment. Movant fully neglected to address required elements of a hostile work environment claim, presumed certain theories were exclusively relied upon when they were not, presented only conclusory arguments to defeat various elements of plaintiff's claim, and made certain arguments bearing no relevance to the issues before the Court.[5]

However, plaintiff's briefing, also, was deficient - yet, plaintiff was not the movant. Plaintiff essentially based its entire opposition *on the conclusory findings* of the VA in its Final Agency Decision. This is not a suit under the Administrative Procedures Act where the standard of judicial

---

[5] Had defendant sought leave to file a reply brief, it might have been able to cure some of the deficiencies addressed above and allowed a more meaningful determination by the Court.

Page 11 of 14

review of the decision of the administrative agency is one of great deference, rather, this matter requires de novo review by this Court and thus, the conclusory findings of the agency are not, in and of themselves, determinative. While the VA's review and findings might be admissible as evidence at trial, again, they are not determinative, as judicial review of a federal employee's discrimination claim is *de novo*. *Chandler*, 425 U.S. at 862, 863, n. 39. Thus, the Court would caution plaintiff as well, and note relying exclusively on the VA's conclusory findings might have been sufficient in this procedural posture and in light of movant's very limited argument and support, yet the same result might not flow under a different scenario. Nevertheless, defendant's motion seeking dismissal of plaintiff's hostile work environment claim is DENIED for failure to carry its burden to establish it is due the relief requested.

    **2.    Retaliation**

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation, a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 331 (5th Cir. 2009). If the plaintiff makes a prima facie case, the burden shifts to the employer to articulate nondiscriminatory reasons for its employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). If the employer satisfies this burden, the plaintiff must prove the employer's proffered reasons are a pretext for its true

discriminatory motivation. *Id.*

Plaintiff contends defendant retaliated against her "by lowering her 2013 performance rating from 'Excellent' to 'Fully Successful' after [she] had engaged in protected activity." [Doc. 1, pp. 6-7] According to plaintiff, this action was "materially adverse," because a rating of "exceptional" entitled her to a bonus, whereas a rating of "fully successful" did not. [Doc. 34, p. 20] Nevertheless, plaintiff concedes she did ultimately receive two bonuses, totaling approximately $1800.[6] [Doc. 34-12, p. 2] Defendant argues plaintiff did not suffer from an adverse employment action because she admits she subsequently received two bonuses. [Id. at 14]

"The antiretaliation provision protect an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). In order to establish an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks omitted). The materiality requirement is "to separate significant from trivial harms." *Id.*; *see also Davis v. Fort Bend County*, 765 F.3d 480, 490 (5th Cir. 2014).

The Fifth Circuit has noted, "Although it is clearly established that the denial of a promotion is an actionable adverse employment action, it is less clear whether a negative evaluation . . . or the denial of a bonus constitute actionable adverse employment actions."[7] *Murray v. Louisiana-Division*

---

[6] According to plaintiff's affidavit, on some unspecified date, the Nurse Executive "authorized payment of two bonuses" to plaintiff, telling plaintiff Nugent "did not have authority" to lower plaintiff's performance evaluation rating. [Doc. 34-12, p. 2]

[7] The Fifth Circuit has further noted while a VA employee rating of "fully successful" might be low relative to an employee's other evaluations, in and of itself, a rating of "fully successful" is not

from 'Excellent' to 'Fully Successful' after [she] had engaged in protected activity." [Doc. 1, pp. 6-7] According to plaintiff, this action was "materially adverse," because a rating of "exceptional" entitled her to a bonus, whereas a rating of "fully successful" did not. [Doc. 34, p. 20] Nevertheless, plaintiff concedes she did ultimately receive two bonuses, totaling approximately $1800.[6] [Doc. 34-12, p. 2] Defendant argues plaintiff did not suffer from an adverse employment action because she admits she subsequently received two bonuses. [Id. at 14]

"The antiretaliation provision protect an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). In order to establish an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks omitted). The materiality requirement is "to separate significant from trivial harms." *Id.*; *see also Davis v. Fort Bend County*, 765 F.3d 480, 490 (5th Cir. 2014).

The Fifth Circuit has noted, "Although it is clearly established that the denial of a promotion is an actionable adverse employment action, it is less clear whether a negative evaluation . . . or the denial of a bonus constitute actionable adverse employment actions."[7] *Murray v. Louisiana-Division*

---

[6] According to plaintiff's affidavit, on some unspecified date, the Nurse Executive "authorized payment of two bonuses" to plaintiff, telling plaintiff Nugent "did not have authority" to lower plaintiff's performance evaluation rating. [Doc. 34-12, p. 2]

[7] The Fifth Circuit has further noted while a VA employee rating of "fully successful" might be low relative to an employee's other evaluations, in and of itself, a rating of "fully successful" is not considered a low rating. *Johnson v. McDonald*, 623 Fed.Appx. 701, 703, n. 1 (5th Cir. 2015).

of Admin. Office of Planning and Budget, 439 Fed.Appx. 349, *2, n. 2 (5th Cir. 2011); see also Johnson v. McDonald, 623 Fed.Appx. 701, 704 (5th Cir. 2015). In this matter, plaintiff concedes she ultimately was not denied a bonus.[8] The Court finds under the facts presented - i.e., where plaintiff concedes she ultimately received two bonuses - and under the applicable jurisprudence, plaintiff suffered no adverse employment action. Accordingly, summary judgment is GRANTED with regard to plaintiff's claim of retaliation.

**IV.   Conclusion**

In light of the reasons set forth above, defendant's motion for summary judgment [Doc. 32] is DENIED IN PART and GRANTED IN PART. The motion is DENIED to the extent it seeks dismissal of plaintiff's claim for hostile work environment; the motion is GRANTED to the extent it seeks dismissal of plaintiff's claim for retaliation.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this __23__ day of August, 2016.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[8]Plaintiff does not present any evidence or argument as to whether or not the bonuses she ultimately received were delayed due to the changes to her performance reviews.